FANNIE HILL, plaintiff in error, vs. JOHN HILL, defendant in error.

The Act of 1870, in relation to temporary alimony, whilst it authorizes the minor children, when in the custody of the wife, to be included in the alimony granted, does not change the rule which authorizes the Judge to look into all the facts and circumstances, and grant or refuse the alimony at his discretion. In this case, we do not think, under all the circumstances, that the Judge acted contrary to a sound discretion in refusing the alimony as to either the wife or minor children.

Alimony. Children. Before Judge PARROTT. Whitfield County. At Chambers. April 17th, 1872.

Fannie Hill, for herself and three minor children, to-wit: Robert B. Hill, twelve years of age, Jennie R. Hill, nine years of age, and [Mariah R. Hill, seven years of age, petitioned the Hon. Josiah R. Parrott, Judge of the Superior Courts of the Cherokee Circuit, exercising jurisdiction in such cases, for the sum of $500 00 as alimony for five months. The petition showed that petitioner and her husband were living in a state of separation; that petitioner had supported herself and said children, without any assistance from her said husband, for the last five months; that said John Hill separated

Hill *vs.* Hill.

from petitioner for no cause whatever; that he is worth the sum of $6,800 00 in property, with an annual income of $812 00; that petitioner had been compelled to employ counsel to bring this suit; prayer, that such orders as are reasonable and just might be passed requiring said John Hill to pay said fees.

John Hill answered said petition substantially as follows: "That respondent and one Robert Batey have been associated in all business operations since respondent came to this country; that petitioner is the daughter of Robert Batey's wife; that from before the time of his marriage with petitioner respondent has been an inmate of said Batey's house; that said two families, except for a short period in the year 1858, have always resided under the same roof and eat at the same table, having, holding and using all things in common and as common property; that at the time of the dissolution of said general partnership on October 25th, 1871, said firm was possessed of real estate to the value of $4,550 00; of stock to the value of $1,400 00; of household furniture, etc., to the value of $1,500 00; that there never has been a division of any of said property, the said Batey persistently refusing to have any settlement of said partnership business; that the personal property has remained in the custody, control, use and occupation of said Batey and his wife and petitioner; that Batey and respondent hold, as trustees for their said wives, one lot of the value of ........; that against the wishes of respondent, on the 10th of April, 1869, said Batey and wife and petitioner determined to commence the business of hotel keeping—said hotel being but a short distance from where the families had hitherto resided; that respondent yielded his preferences and gave his time and labor to said business as far as it was necessary; that after the removal to the hotel, petitioner refused to receive and treat respondent as her husband, declining to room and bed with him; that upon one occasion, when respondent went to petitioner's room at the hotel, she ordered him to leave, and stated that if he remained she would not go to bed during the night; that petitioner manifested a decided prefer-

ence for the company of other men, admitting them into her private room, accompanying them to theatrical performances, taking long rides with them on horseback, arousing respondent's suspicions of her fidelity; that petitioner, against the expressed wishes of respondent, left her home and remained absent on long trips to distant cities, Atlanta, Chattanooga, New York, Louisville, Selma and elsewhere; in fact, she became a rover; that respondent was stricken with paralysis and was in a very critical condition for a number of days—a part of the time speechless, and not expected to live; that he was taken to a room in said hotel and there remained during his illness, in the same house with his said wife; that she refused to come to his room, and did nothing to minister to his wants; that when petitioner was about to start on one of her trips to New York, with one of respondent's children, upon his objecting, she drew a pistol, followed respondent, and declared her intention to kill him; that respondent spared no efforts to effect a reconciliation with his said wife, during all of this time eating at the same table with her when she was at home, until March, 1871, when he in despair commenced boarding with his brother; that the hotel business was abandoned in October, 1871, petitioner then went to New York, as she alleged, and remained absent three months; that upon her return, for some time, she slept in the same house with respondent, but in a different room, insulting him upon every possible occasion, until he was compelled to cease sleeping in said house; that respondent is convinced that petitioner has been faithless to him and guilty of acts of adultery with different persons; that the dissolution of said partnership was caused by the recent drunkenness of Batey; that respondent has sold out his undivided interest in all of said property, except the stock, to his brother, Robert Hill, taking his notes at one, two, three and four years, secured by a mortgage on the property sold; that said firm of Batey & Hill was, at the time of the dissolution, indebted in the sum of $2,000 00; that petitioner and her children have been supported by respondent with the proceeds of said undivided property, until the

Hill *vs.* Hill.

sale aforesaid, and said children have since been supported by the proceeds of his labor; that he has frequently applied for the custody of said children, but petitioner has refused to deliver them to him; that respondent prays the Court to order said children delivered to him; that petitioner has forfeited all right to a support from respondent by her misconduct; that she is now annoying respondent with suits in a Justice Court for the board of said children; prayer, that said suits be enjoined and that all questions in controversy may be settled in this proceeding.

The testimony was very strong in support of respondent's answer. Petitioner denied the material allegations. Two witnesses swore that they had resided in the same house with her, and had never seen any imprudent conduct. Four witnesses testified that they had known her for a long time, and had not observed any unchaste conduct. There was some evidence tending to show that she had been suffering with disease of the womb, and had been advised by her physician to go to the North for her health.

The Court refused the temporary alimony prayed for, and petitioner excepted and assigns said ruling as error.

D. A. WALKER; JOSEPH GLENN, for plaintiff in error.

1st. Act of 1870 authorizes the wife to sue for alimony, in behalf of herself and minor children, in the same manner as if a libel for divorce was pending. In such case, the conduct of the wife is not in issue: Code, secs. 1732, 1735.

2d. Adultery does not deprive the wife of the right of temporary alimony: 18th Ga. R., 273.

3d. The father is bound to support his minor children: Code, sec. 1783.

McCUTCHEN & SHUMATE, represented by R. J. McCAMY, for defendant.

There must be a suit for divorce or permanent alimony, to authorize temporary alimony: Code, sec. 1732, *et seq.* The Act of 1870 does not change this rule.

Hill *vs.* Hill.

Adultery deprives wife of right to necessaries from husband : Code, sec. 1478.

McCay, Judge.

Whilst we agree that under section 1738 of Irwin's Revised Code, the wife is properly a party to a motion for temporary alimony for the support of the children in her custody until a final decree is had, yet we see no reason why the Judge is not authorized in such a case, as well as when the proceeding is for the wife alone, to look into the circumstances and grant or refuse the alimony at his discretion. Section 1735 expressly says he may grant or refuse, according to his discretion under the facts, in applications for temporary alimony. True, the bad conduct of the mother may not be a good reason for refusing a support to the children ; but the want of any good reason for the separation, the fact that there is no special necessity for judicial interference, as the fact that the father does support them, etc., may justify the Judge in his refusal. Suits for divorce and alimony ought not to be encouraged, and a case showing that it is proper to interfere ought to be made out, before so strong a measure should be taken as to force a man even to support his own children through other channels than his own hands and in his own way. In this case, we do not think there was any abuse of the discretion of the Judge. We do not care to go over the evidence. This woman does not come before the Court in a light calculated to awaken its sympathies, nor does it appear that the father is failing in his duties to his children, and we will not undertake to say, over the opinion of the Judge who heard the witnesses, and saw and listened to the statements of the parties, that the father shall be compelled to employ a third person to administer his duties to the fruit of his loins.

Judgment affirmed.