**MIDDLE GEORGIA NEUROLOGICAL SPECIALISTS, P.C., et al., Plaintiffs–Appellees, Cross–Appellants,**

v.

**SOUTHWESTERN LIFE INSURANCE COMPANY, Defendant–Appellant, Cross–Appellee.**

No. 90–8651.

United States Court of Appeals, Eleventh Circuit.

Aug. 3, 1992.

Richard H. Sinkfield, Rogers & Hardin, Linda Owens Vinson, Atlanta, Ga., for defendant-appellant, cross-appellee.

Charles M. Cork III, Reynolds & McArthur, Macon, Ga., for plaintiffs-appellees, cross-appellants.

Before HATCHETT and DUBINA, Circuit Judges, and CLARK, Senior Circuit Judge.

PER CURIAM:

In this diversity action, Southwestern Life Insurance Company ("Southwestern"), appealed the district court's order granting summary judgment in favor of Middle Georgia Neurological Specialists, P.C. ("MGNS"), Piper Cohn, Matthew Cohn, Gary Potts and L. Gail Cohn and Piper L. Cohn as co-administrators of the estate of Perry L. Cohn ("the beneficiaries"). The district court found that Southwestern was obligated to pay life insurance proceeds under two policies insuring the life of Dr. Perry L. Cohn ("Dr. Cohn"). The beneficiaries cross-appealed the district court's denial of prejudgment interest on the proceeds.

Because both issues presented by this appeal involved questions of state law implicating substantial public policy concerns, and because we were unable to locate clear controlling precedent in the decisions of the Georgia courts that were dispositive of these issues, we certified the following questions to the Supreme Court of Georgia:[1]

(1) Under the facts of this case, when the insurance policy application established the policy's delivery to and acceptance by the applicant as a condition precedent to the formation of the insurance contract, but the issued policy specified a date certain on which coverage was said to be effective and from which future premium payments were to be calculated, is the failure of actual delivery of the policy of insurance fatal to

---

1. *See Middle Georgia Neurological v. Southwestern Life*, 946 F.2d 776 (11th Cir.1991).

contract formation so as to render the coverage ineffective?

(2) When insurance proceeds are paid within twelve months of the insured's death, does O.C.G.A. § 33–25–10 excuse the payment of prejudgment interest, or should prejudgment interest be determined pursuant to O.C.G.A. § 7–4–15 in that circumstance?

The Supreme Court of Georgia has now answered the first certified question in the negative. *Southwestern Life v. Middle Georgia Neurological,* 416 S.E.2d 496 (1992). Concerning the second question, the Supreme Court of Georgia held that "O.C.G.A. § 33–25–10 governs the entitlement to prejudgment interest on life insurance proceeds and does not require the payment of prejudgment interest where the insured dies within twelve months of issuance of the policy. O.C.G.A. § 7–4–15 is inapplicable to prejudgment interest on life insurance proceeds." *Id.* at 498. In light of the Supreme Court of Georgia's opinion, attached hereto as an appendix, we affirm the district court's order granting summary judgment in favor of the beneficiaries and the district court's order granting Southwestern's motion for reconsideration in part, and declining to award prejudgment interest.

AFFIRMED.

## APPENDIX

In the Supreme Court of Georgia

S92Q0202.

Decided: May 19, 1992

Southwestern Life

v.

Middle Georgia Neurological.

CLARKE, Chief Justice.

This case came to this court as a certified question from the United States Court of Appeals for the Eleventh Circuit. *See Middle Georgia Neurological v. Southwestern Life,* 946 F.2d 776 (11th Cir.1991). The facts can be summarized as follows:

Dr. Perry Cohn made applications for two life insurance policies with Southwestern Life Insurance Company in November, 1987. The applications contained the following clause:

If an Agreement with Respect to Advance Premium Prepayment has not been issued [and none was], *the policy will be effective* when it is delivered to and accepted by the Applicant only if (a) the first premium has been paid, and (b) all answers recorded in this application represent without material change complete and true answers to the same questions as if they were asked at the time of the delivery of the policy applied for ... (emphasis added).

Dr. Cohn underwent a physical examination in December, 1987, but the blood samples taken were not acceptable to the insurance company. In March, 1988 a satisfactory blood sample was taken and Dr. Cohn's insurance agent, Stanley Rosen, informed Dr. Cohn that the policies had been approved by underwriting. He directed Dr. Cohn to send the first monthly premium to the company. On March 28, Dr. Cohn sent a check for $10,000. The policies were issued on March 30 and were received by Rosen on April 6. The policies stated "The policy date is the effective date for all coverage provided in the original application." The policy dates were listed as March 28. The policies were accompanied by a letter to Rosen that authorized him to deliver the policies if the "Applicant" confirms that all of the information on his original application was still true and correct.

Rosen tried to deliver the policies, but found out that Dr. Cohn was on vacation. Dr. Cohn suffered a heart attack while still on vacation. He died on April 8, 1988. An autopsy revealed that he had a previous heart attack at least six weeks before the one that killed him. There was no evidence to indicate whether Dr. Cohn knew that he had an earlier heart attack. The beneficiaries of the policies obtained the policies from Rosen and filed suit to recover policy proceeds. The United States District Court ruled that the policies were effective on the date of Dr. Cohn's death. The District

Court also held that the insurance company was not required to pay interest from the date of the insured's death. Each party appealed. The Eleventh Circuit certified the following questions to this court:

(1) Under the facts of this case, when the insurance policy application established the policy's delivery to and acceptance by the applicant as a condition precedent to the formation of the insurance contract, but the issued policy specified a date certain on which coverage was said to be effective and from which future premium payments were to be calculated, is the failure of actual delivery of the policy of insurance fatal to contract formation so as to render coverage ineffective?

(2) When [the insured dies within twelve months of issuance of the policy of insurance, or][1] insurance proceeds are paid within twelve months of the insured's death, does OCGA § 33–25–10 excuse the payment of prejudgment interest, or should prejudgment interest be determined pursuant to OCGA § 7–4–15 in that circumstance?

1. The question posed assumes (as the insurance company argues) that the language in the applications that defines when the "policy will be effective" necessarily defines conditions precedent to contract formation. We begin our analysis by rejecting this assumption. The provision in the applications state conditions precedent to liability, not conditions precedent to contract formation. *See generally*, J. Calamari & J. Perillo, *Contracts*, Ch. 9 (1970). As the insurance company itself points out in its brief, "It is common practice for parties, *upon forming a contract*, to provide that the contract will have an 'as of date'—an 'effective date' earlier than the date on which the agreement was actually reached" (emphasis added). We note also that parties to a contract of insurance may select a future date or validating event as the "effective date" of the policy. *See*,

e.g., *Reserve Loan Life Insurance Co. v. Phillips*, 156 Ga. 372, 119 S.E. 315 (1923); *Bierer v. Nationwide Insurance Co.*, 314 Pa.Super. 397, 461 A.2d 216 (1983). Thus, the "effective date" or a statement of conditions that must be met before the "policy will be effective" does not determine whether the parties entered into a contract. Rather, a contract of life insurance is consummated upon the unconditional written acceptance of the application for insurance by the company to which the application is made. *New York Life Insurance v. Babcock*, 104 Ga. 67, 30 S.E. 273 (1898).

The insurance company argues here that it did not unconditionally accept Cohn's offer for a contract of insurance. The facts here require rejection of this argument. The insurance company received Dr. Cohn's applications, conducted its medical tests, approved the applications, called for the first premium, received the first premium, and issued conforming policies which each state unconditionally that "This policy is a legal contract between the Company and the owner." The following pages list Dr. Cohn as the "owner" of the contract. The policies state that the application and the policy together form the "entire agreement" of the parties and specify that the contract became effective on March 28. There can be no doubt that a contract was formed upon the issuance of the policy. The letter addressed to Rosen that accompanied the policies was not referred to in the policies and was not made a part of the contract. Nothing stated in that letter can be considered a condition precedent to contract formation, a term of the contract or condition precedent to liability under the contract. *Georgia Life Insurance Co. v. King*, 120 Ga.App. 682, 172 S.E.2d 167 (1969).

Finally, the insurance company argues that coverage was not in effect at the time of Dr. Cohn's death because the conditions precedent to liability that were included in the application were not met. We have acknowledged that an insurance company

---

**1.** The language in brackets revises the question to conform to the language of the statute and the facts of the case presented.

may validly define conditions precedent to liability. *Reese v. Fidelity Mutual Life Ass'n*, 111 Ga. 482, 36 S.E. 637 (1900). Where both the application and the issued policy state conditions precedent to liability, and the policy has no conflicting provision, such conditions will be enforced by the Georgia courts. *See, e.g., Pierce v. Life Insurance Company of Virginia*, 50 Ga.App. 337, 178 S.E. 189 (1935) (both the application and the policy itself reserved conditions that were required to be fulfilled before the policy would become effective). However, where the conditions precedent to liability that are described in the application or policy are contradicted by a specified date on which insurance coverage is to take effect, the date certain controls. *Brooks v. Northwestern Mutual Life Insurance Co.*, 193 Ga. 522, 18 S.E.2d 860 (1942). We conclude therefore that the insurance company incurred the absolute duty to perform under the contract on March 28, the stated "effective date" of the policy.

2. In response to the second question, as revised, we hold that OCGA § 33–25–10 governs the entitlement to prejudgment interest on life insurance proceeds and does not require the payment of prejudgment interest where the insured dies within twelve months of issuance of the policy. OCGA § 7–4–15 is inapplicable to prejudgment interest on life insurance proceeds.

Questions answered.

All the Justices concur.